# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTINE DE LEVA, | |
| Plaintiff, | |
| v. | Case No. 8:21-cv-01820-DKC |
| LOWE'S COMPANIES, INC. and LOWE'S HOME CENTERS, LLC, | |
| Defendants. | |

## DECLARATION OF HUNG DANG

I, Hung "Chris" Dang, state as follows:

1.      I make this Declaration of my own free will, based upon my personal knowledge of the facts set forth below and review of Company records.  I am over 18 years of age, and I am competent to make this Declaration.

2.      I have been employed by Lowe's Home Centers, LLC ("Lowe's") since August 2020.  My current position is District Asset Protection Manager.  In March 2021, I was a Senior Asset Protection Manager.

3.      On or about March 10, 2021, I received a TellAP4Me case report regarding Plaintiff Christine De Leva.  The report noted that, on March 8, 2021, a customer came into the Frederick, Maryland store trying to return a tool and the computer registered that the tool was already returned.  The report further noted that, after being informed by the Lowe's Information Technology team that the tool had in fact been returned, Assistant Store Manager Terence Hopkinson checked the surveillance cameras.  The report also noted that the video footage showed Ms. De Leva removing money from the cash register in the return transaction.

4.      I investigated Ms. De Leva's theft activities in Asset Protection Case number C-4628947.  As part of the investigation, I reviewed video surveillance and used Lowe's computer systems to match the invoices at issue to exact times on the video (as our video system has date and time stamps).  My investigation revealed the following from the video evidence.

5.      Lowe's video evidence shows that on March 8, 2021, Ms. De Leva engaged in two fraudulent cash returns using the sales credentials / login of her immediate supervisor Jeffrey Bowden.  Lowe's video evidence shows that at approximately 10:27 AM on March 8, 2021, Ms. De Leva pulled a printed receipt from her Lowe's vest and completed a cash return without a customer or merchandise present.  When the till opened, Ms. De Leva removed a $100 bill and placed it underneath the receipt paper on the side of the register.  She subsequently picked up the paper and the bill and walked away.  Lowe's records maintained in the regular course of business show that the total cash refund loss amount was $199.58.  Although the video shows Ms. De Leva taking $100 rather than the full invoice amount, Lowe's records show she refunded the entire invoice amount.  As there was no merchandise to account for the refunded dollar amount of $199.58, the cash loss to Lowe's is the full amount of the refund transaction ($199.58).

6.      Lowe's video evidence shows that at approximately 1:04 PM on March 8, 2021, Ms. De Leva completed a fraudulent cash return with no customer or merchandise present.  The invoice showed a return of a 36-inch by 84-inch barn door.  The video shows that this door was not present for the transaction, and no customer was present.  Lowe's records show that the total cash refund loss amount was $190.78.

7.      Lowe's video evidence shows that on March 19, 2021, Ms. De Leva engaged in a third fraudulent cash return and also engaged in two separate merchandise pass-off transactions

to a Lowe's customer identified as Pedro Andrade (*i.e.*, a transaction in which the associate does not charge the customer for the merchandise). For each of these transactions, Ms. De Leva again used the sales credentials / login of her immediate supervisor Mr. Bowden.

8.      More specifically, Lowe's video evidence shows that at approximately 7:54 AM on March 19, 2021, Ms. De Leva completed a pass-off sales transaction for Pedro Andrade. Ms. De Leva did not scan 8 white fencing posts valued at $21.98 each that Mr. Andrade brought to the register and instead only rang up one random item for $2.00 (a 2-4-8 stud) that was not on the customer's cart. Mr. Andrade left with the 8 fencing posts. The loss from this merchandise pass off was $175.84.

9.      Lowe's video evidence shows that at approximately 8:53 AM on March 19, 2021, Ms. De Leva pulled out a printed receipt from her Lowe's vest and then completed a cash refund without the merchandise present. During the transaction, Ms. De Leva was speaking to Pedro Andrade. Ms. De Leva removed the cash and placed the money along with the printed receipt on the left side of the register  A few minutes later, Ms. De Leva placed the cash and the printed receipt inside of her left pants pocket. The cash refund loss amount was $210.94.

10.     Lowe's video evidence shows that at approximately 9:15 AM on March 19, 2021, Ms. De Leva completed a second pass-off sales transaction to Andrade. Ms. De Leva did not scan 2 Husqvarna Backpack Blowers valued at $299.00 each and 2 Husqvarna String Trimmers valued at $339.00 each that Mr. Andrade brought to the register. Ms. De Leva removed product protection from the 2 Husqvarna String Trimmers and fake scanned the merchandise. Ms. De Leva only rang up two contractor trash bags on the sales invoice for a total of $20.00. Mr.

3

Andrade left with the 4 Husqvarna items.  The total loss from this merchandise pass off was $1,276.00.

11.     My investigation based on the video and documentary evidence (*i.e.*, computer and invoice records) concluded that the total loss from Ms. De Leva's theft was $2,053.14, which included both the cost of the merchandise that Ms. De Leva allowed Mr. Andrade to take without paying for and the cost of the merchandise in the fraudulent return transactions.  As is standard practice, I submitted my written findings in my case report and supporting documents and videos to my supervisor, Asset Protection Regional Investigations Manager Austin Langenfelder, who then approved me to conduct an interview of Ms. De Leva.  A true and accurate copy of my case report is attached hereto as Exhibit 1.  I scheduled the in-person interview to take place at the Frederick store on March 29, 2021.

12.     I met with Ms. De Leva on March 29, 2021 in the Staffing and Scheduling Administrator's office in the back of the Frederick store and conducted an interview.  Assistant Store Manager Jasmine Summers sat in on the interview as a witness and took contemporaneous notes on a witness interview log regarding what she observed.  Ms. De Leva entered the room voluntarily, meaning that no one forced her into the room or threatened her if she did not enter the room.  During the interview, the door to the office was closed for privacy purposes.  At no time did Ms. De Leva tell me that she wanted to leave or ask me if she could leave the room.  At no time did I tell Ms. De Leva that she could not leave the room or otherwise indicate that she was not free to leave.  Ms. De Leva sat in a chair closest to the door; Ms. Summers sat on the far side the room; and I sat in between Ms. De Leva and Ms. Summers.  Ms. Summers and I did not block Ms. De Leva's path to the door at any point and the door did not lock from the inside.  Ms.

De Leva could have left the room at any point.  Ms. Summers and I did not restrain or threaten

Ms. De Leva in any way during the interview, including no threat of force or other conduct to

remain in the room.

13.     I asked Ms. De Leva about the cash returns and the merchandise pass-off

transactions to the customer identified as Pedro Andrade.  She admitted to taking the cash from

the register on several occasions.  She also admitted that she allowed Mr. Andrade to leave with

the merchandise for which he did not pay.

14.     As is standard protocol and best practice, I asked Ms. De Leva if she would write

a statement regarding what happened in the transactions at issue.  I did not use the terms "theft"

or "steal" or similar words during my interview.  Rather, I used the term "loss" to Lowe's and

asked Ms. De Leva to include in her statement whether she had caused a loss to Lowe's.  I made

no comment about possible criminal prosecution or about whether Lowe's would terminate her

employment.  Ms. De Leva handwrote a statement, a true and accuracy copy of which is attached

hereto as Exhibit 2.  She admitted in the written statement to taking money from the register.

She also admitted to allowing Mr. Andrade to leave without paying for the merchandise at issue.

Ms. De Leva wrote this statement voluntarily, and Ms. Summers and I signed the statement as

witnesses.

15.     At the time that I began the interview with Ms. De Leva on March 29, 2021, I had

reason to believe that she had committed theft from Lowe's on five separate occasions -- three

instances of a fraudulent return and two instances of a merchandise pass-off as noted above and

described in detail in my case report.  *See* Exhibit 1.  During the interview, I also received Ms.

De Leva's admission both verbally and in writing that she took the cash from the register (thus

admitting to the fraudulent cash returns).  She also admitted verbally to the merchandise pass-offs to Mr. Andrade.  Ms. De Leva never mentioned discrimination, pay discrimination, or that she was being retaliated against for allegedly complaining about her pay.

16.     After concluding my interview of Ms. De Leva, I called Mr. Langenfelder and shared what Ms. De Leva had admitted to during the interview.  Mr. Langenfelder had previously reviewed my report of the video and documentary evidence into Ms. De Leva's theft activities.  Mr. Langenfelder informed me that Lowe's would be pursuing criminal prosecution and asked me to contact local law enforcement.  I called the Frederick County Sheriff's Department and provided some general information that an employee had completed fraudulent cash returns and also merchandise pass-offs. Separately, I called Area HR Business Partner Ramandeep Kakar and shared what Ms. De Leva had admitted to during the interview.  I had previously shared with Mr. Kakar my findings of the video and documentary evidence of Ms. De Leva's theft activities.  Mr. Kakar approved the termination of Ms. De Leva's employment.  I did not make the decision to contact Frederick County law enforcement or the decision to terminate Ms. De Leva's employment.

17.     Two law enforcement professionals from the Frederick County Sheriff's Office arrived to meet with Ms. De Leva.  I left the door open to the office and left the room to allow them to meet with her.  I did not return to speak to Ms. De Leva after contacting the Frederick County Sheriff's Office.  Deputy Testerman of the Frederick County Sheriff's Office e-mailed me and Mr. Langenfelder several months later, in August 2021, asking for the video evidence of Ms. De Leva's theft transactions.  Mr. Langenfelder provided Mr. Testerman with a link to access the videos per his request.  I had no involvement in the decision by Frederick County to

pursue criminal charges against Ms. De Leva; my involvement was limited to contacting the Frederick County Sheriff's Office at Mr. Langenfelder's direction and corresponding with Deputy Testerman regarding his request to obtain Lowe's video evidence of Ms. De Leva's theft.

18.     At the time I conducted my investigation into Ms. De Leva, I had no knowledge of any concern or complaint that she may have expressed to Lowe's about her pay.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on April 27, 2022.

_____
HUNG "CHRIS" DANG

# EXHIBIT 1



| Case Detail | 🔒 |
|---|---|
| **Case Overview** | |

| Case Number | C-4628947 | Record Type | Internal [Change] |
|---|---|---|---|
| Owner | Hung Dang [Change] | Status | Pending Approval |
| Owner Title | Senior Asset Protection Manage | Total Admitted $ | $2,053.14 |
| Location | 516 FREDERICK MD | Court | |
| Interview Date | 3/29/2021 | | |
| Internal Investigator | Hung Dang | | |

| **Internal Subject** | | | |
|---|---|---|---|
| Is this a Lowe's Associate? | Yes | Job Title | Sales Specialist Pro |
| Employee | Christine De Leva | Employee Id | 2413608 |
| Third Party Name | | Date of Birth | 4/9/1975 |
| Address | 7417 LAKE KATRINE TERRACE | Gender | Female |
| City | GAITHERSBURG | Ethnicity | |
| State | MD | Hire Date | 2/5/2018 |
| Zip | 20879 | Phone Number | -- |
| Discount Card # | 2900025615372 | | |

| **Investigation Log** | | | |
|---|---|---|---|
| First Date of Known Loss | 3/8/2021 | Is there photo/video for this case? | Yes |
| Date Loss Identified | 3/22/2021 | Video Evidence Of: | Merchandise Theft; Refund Fraud - Cash |
| Did the subject sell the items online? | No | | |
| Select online sites product is sold | | | |
| Other sites product is sold | | | |

C-4628947

| Interview Info | | | |
|---|---|---|---|
| Was this an interview type? | No | Did subject give verbal admission? | Yes |

**Internal Narrative: (Who, What, When, Where and Why) Do not include opinions.**

| | | | |
|---|---|---|---|
| Was this an information interview? | No | Written Statement? | Yes |
| Internal Narrative | | | |
| Interviewed By | | Remote CCTV Used in Investigation? | Yes |
| Interview Witness | | Did Investigation conducted remotely? | No |
| | | Was this a phone interview? | No |
| | | Was admission noted in statement? | Yes |
| Did you check the Subject's ID? | No | Admitted length of dishonesty in days | |
| Location of Interview | | Subject's Reason(s) Stated for not acting | |
| Were there any requests by subject? | No | Names of Accomplices | |
| Requests by Subject | NA | How many rollovers did this case produce | 0 |
| Response to Subject's Requests | NA | | |
| Interview Start Date/Time | 3/29/2021 8:46 AM | Interview End Date/Time | 3/29/2021  10:15 AM |

BACKGROUND
On 3/10/2021, I Sr. Asset Protection Manager Chris Dang began an investigation on a Subject identified as PRO Associate Christine De Lava at Store #0763 in Frederick, MD. This investigation was initiated after receiving an Alert from TellAP4Me that the Subject was completing fraudulent cash returns and keeping the cash. Upon conducting video review the following activity was observed. I then communicated this activity to Regional Investigations Manager Austin Langenfelder and approval was granted to me to conduct an internal interview on the Subject.

INVESTIGATION
On 3/08/2021 - (Return Invoice#387559) - At approximately 10:27AM, the Subject was observed producing a printed receipt from her vest and completing a fraudulent cash return without a customer or merchandise present under her manager's (Jeffrey Bowden) logon credentials. The Subject processed the refund transaction and when the till opened the Subject is observed removing a $100.00 bill and placing it underneath the receipt paper and walking away with the money. The cash refund loss amount is $199.58.

On 3/08/2021 - (Return Invoice#69814) - At approximately 1:04PM, the Subject was observed completing a fraudulent cash return without a customer of merchandise present. The cash refund loss amount is $190.78.

On 3/19/2021 - (Invoice#38109) - At approximately 8:44AM, the Subject was observed completing a pass-off sales transaction for a customer identified as "Pedro Andrade". The Subject did not scan 8 white fencing posts (ITEM#1025922) valued at $21.98 each and only rings one random item (a 2-4-8 stud) that is also not on the customer's cart for $2.00. The loss from this merchandise pass off is $175.84.

On 3/19/2021 - (Return Invoice #38111) - At approximately 8:53AM, the Subject was observed producing a printed receipt from her vest and then completing a cash refund without the merchandise being present. The Subject had logged onto the POS under her manager's (Jeffrey Bowden) logon credentials and then proceeded to ring the cash refund. The Subject then removed the cash and placed the money along with the POS printed receipt on the left side of the register at 8:58:15AM. At approximately 9:02:06AM, the Subject proceeded to place the cash money and printed POS receipt inside of her left pants pockets. During this transaction the customer identified as "Pedro Andrade" was observed standing in front of the POS and talking to the Subject. The cash refund loss amount is $210.94.

On 3/19/2021 - (Invoice#38116) - At approximately 9:15AM, the Subject was observed completing a pass-off sales transaction for a customer identified as "Pedro Andrade". The Subject did not scan 2 Husqvarna Backpack Blowers (ITEM#192729) valued at $299.00 each and 2 Husqvarna String Trimmers (ITEM#1160430) valued at $339.00 each. The Subject was observed removing product protection from the 2 Husqvarna String Trimmers as well as fake scanning the merchandise. The Subject only scanned two contractor trash bags on the sales invoice for a total of $20.00. The total loss from this merchandise pass off is $1,276.00.

The total identified loss is $2,053.14

On 3/29/2021, I conducted an internal interview on the Subject with Assistant Store Manager Jasmine Summers as a witness to the interview. During the course of the interview, the Subject admitted to completing the aforementioned cash refunds and keeping the money for herself. The Subject indicated that she then gave the money to her friend. The Subject also indicated that she allowed the External Subject identified as "Pedro Andrade" to leave the store without validating any type of receipt for the unpaid merchandise. The Subject admitted to knowingly causing a total loss of $2,053.14 to Lowe's. The Subjected stated that she was not paid enough and did not get a good raise on her last performance appraisal. The Subject provided a written statement.

DISPOSITION
On 3/29/2021, I completed my investigation on the Subject and informed RIM Langenfelder, HRBP Raman Kakar, and SM Scott Willis of my findings. RIM Langenfelder recommended prosecution and HRBP recommended termination. I then contacted the Frederick County Sheriffs Office and Deputy Testerman arrived on scene. Deputy Testerman then reviewed the investigation and charged the Subject with theft (Case#21-028322). SM Willis then terminated the Subject from further employment with the Company and the Subject exited the building.

Chris H. Dang
D814 Sr. APM
END OF REPORT

03/30/2021

DEF000449

C-4628947

Terms of Promissory

## HR Involvement

| | | | |
|---|---|---|---|
| **Was Post Interview Card Completed?** | Yes | **Date/Time Terminated** | 3/29/2021 11:30 AM |
| **Who in HR was case reviewed with?** | Ramandeep Kakar | **Terminated by Whom** | Store Manager Scott Willis |
| **HR Action Taken** | Terminated - Theft Related | **Time HR Involved** | 10:35 AM |

## Police Involvement

| | | | |
|---|---|---|---|
| **Prosecuted** | Yes | **Police Officer Name** | Deputy Testerman |
| **Approved By (User Lookup)** | Austin Langenfelder | **Police Department** | Frederick County Sheriffs Office |
| **Police Notified** | Yes | **Police Officer Badge Number** | |
| **Police Notified Time** | 3/29/2021 10:45 AM | **Police Report Number** | 21-028322 |
| **Police Arrival Time** | 3/29/2021 11:00 AM | | |
| **Police Departure Time** | 3/29/2021 11:45 AM | | |
| **Did police transport the subject?** | No | | |
| **Evidence Disposition** | Other (specify in narrative) | | |

## Source of Investigation

| | | | |
|---|---|---|---|
| **Source that initiated the investigation?** | TellAP4Me | **Recommend for Reward?** | Yes |
| **If by store report, select report** | N/A | **AP Insights Report used** | Not Applicable |
| **If DART Report - which one?** | | **Insight Number** | |

## Case Disposition Ref Checklist

| | | | |
|---|---|---|---|
| **Written Statement Contain an Admission** | Yes | **Video clearly show subject causing loss** | Yes |
| **If NO, do supporting docs support case** | | **Does case meet prosecution guidelines** | Yes |
| **Did subject initial/date docs/evidence** | Yes | **Can emp make restitution?** | Yes |
| **Other employees implicated in interview** | Yes | **Statements obtained from all witnesses?** | Yes |
| **If NO, was the question asked?** | | **If NO, why?** | NA |
| **Witness Interview Form Used in Interview** | Yes | | |

**Red File Narrative: (Who, What, When, Where and Why) Do not include opinions.**

| Narrative | On 3/10/2021, I Sr. Asset Protection Manager Chris Dang began an investigation on a Subject identified as PRO Associate Christine De Lava after receiving an AP tip from TellAP4Me that the Subject may be completing fraudulent cash returns and keeping the cash. Upon conducting video review, the following activity was observed.

On 3/08/2021 - (Return Invoice#387559) - At approximately 10:27AM, the Subject was observed producing a printed receipt from her vest and completing a fraudulent cash return without a customer or merchandise present under her manager's (Jeffrey Dowden) logon credentials. The Subject processed the refund transaction and when the till opened the Subject is observed removing a $100.00 bill and placing it underneath the receipt paper and walking away with the money. The cash refund loss amount is $199.58.

On 3/08/2021 - (Return Invoice#69814) - At approximately 1:04PM, the Subject was observed completing a fraudulent cash return without a customer or merchandise present. The cash refund loss amount is $190.78.

On 3/19/2021 - (Invoice#38109) - At approximately 7:54AM, the Subject was observed completing a pass-off sales transaction for a customer identified as "Pedro Andrade". The Subject did not scan 8 white fencing posts (ITEM#1025922) valued at $21.98 each post and only rings one random item (a 2-4-8 stud) that is also not on the customer's cart for $2.00. The loss from this merchandise pass off is $175.84.

On 3/19/2021 - (Return Invoice #38111) - At approximately 8:53AM, the Subject was observed producing a printed receipt from her vest and then completing a cash refund without the merchandise being present. The Subject had logged onto the POS under her manager's (Jeffrey Bowden) logon credentials and then proceeded to ring the cash refund. The Subject then removed the cash and placed the money along with the POS printed receipt on the left side of the register at 8:58:15AM. At approximately 9:02:06AM, the Subject proceeded to place the cash money and printed POS receipt inside of her left pants pockets. During this transaction the customer identified as "Pedro Andrade" was observed standing in front of the POS and talking to the Subject. The cash refund loss amount is $210.94.

On 3/19/2021 - (Invoice#38116) - At approximately 9:15AM, the Subject was observed completing a pass-off sales transaction for a customer identified as "Pedro Andrade". The Subject did not scan 2 Husqvarna Backpack Blowers (ITEM#192729) valued at $299.00 each and 2 Husqvarna String Trimmers (ITEM#1160430) valued at $339.00 each. The Subject was observed removing product protection from the 2 Husqvarna String Trimmers as well as fake scanning the merchandise. The Subject only scanned two contractor trash bags on the sales invoice for a total of $20.00. The total loss from this merchandise pass off is $1,276.00.

The total identified loss is $2,053.14 |

**Related Case**

| Is this tied to an ORC Master Case? | | ORC Master Case | |
| --- | --- | --- | --- |
| Created By | Hung Dang, 3/22/2021 11:25 AM | Last Modified By | Hung Dang, 3/30/2021 2:05 PM |

## Involved Internal Subject

| First Name | Last Name | Date of Birth | Phone (Primary) | Home ZIP | Sex | Ethnicity | Drivers License Number | Drivers License State | Home Address | Home City | Home State |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Christine | De Leva | 4/9/1975 | -- | 20879 | | | | | 7417 LAKE KATRINE TERRACE | GAITHERSBURG | MD |

## MO Observations

| MO Type | Admitted To | # of Times Proven | Total Value Lost (including recovered) | Total Recovered | Date Activity Started | Initiated Investigation |
| --- | --- | --- | --- | --- | --- | --- |
| Cash Theft | Yes | 3 | $2,053.14 | $0.00 | 3/8/2021 | Yes |

## Attachments

C-4628947

| Title | Preview |
|-------|---------|
| 3-19-2021-INVOICE-38116.docx |  |
| 3-19-2021-RETURN-INVOICE-38111.docx | |
| 3-19-2021-INVOICE-38109-Pic.bmp | |

DEF000452

| Title | Preview |
|-------|---------|
| 3-8-2021-RETURN-INVOICE-38759.docx |  |
| Christina De Lava - February 2021 - Transaction Analysis Detail.xlsx | |
| C-4628947 Case Documents.pdf | |
| 3-17-2021-Date-Last-Sold-Customer-Purchase-Husqvarna-Backpack-Blower.br | |

C-4628947

| Title | Preview |
|-------|---------|
| 3-19-2021-INVOICE-38109.docx | - SALE -<br>SALES#: SO516CD2 2413608   TRANS#: 86154840 03-19-21<br>6005 2-4-8 KD WW SELECT STUD       2.00<br>SUBTOTAL:          2.00<br>MD - STATE TAX:        0.12<br>INVOICE 38109   TOTAL:          2.12<br>VISA:             2.12<br>VISA  XXXXXXXXXXXX7191  XXXX  XXXXXX<br>CHIP REFID:0516380002763 03/19/21 07:53:31<br>APL: CAPITAL ONE VISA   TVR: D080008000<br>AID: A0000000031010   TSI: E800<br>0516 38  03/19/21 07:54:12   REF#: 109<br>CUSTOMER: PEDRO ANDRADE |
| 3-19-2021-INVOICE-38116-Pic.bmp |  |
| 3-8-2021-RETURN-INVOICE-69814.docx | - RETURN 69814 -<br>SALES#:R SO516JB3 2153497   TRANS#:<br>81226659 03-08-21<br>RET 2583279 36-84 BARN DR K HOLLOW CO<br>179.98-<br>ORIG. STORE:  516  DATE:022521  INV:67089<br>SUBTOTAL:       179.98-<br>MD - STATE TAX:       10.80-<br>TOTAL RETURN:       190.78-<br>CASH :       190.78-<br>0516 69  03/08/21 13:04:25   REF#: 814 |
| 3-8-2021-Still-Shot.bmp |  |

C-4628947

| Title | Preview |
|-------|---------|
| Christina De Lava - March 2021 - Transaction Analysis Detail.xlsx |  |

DEF000455

# EXHIBIT 2

Page 1

3/29/2021
9:44 am

I, Christine DeLeva, am giving a statement to Chris Dang. I live at 7417 Lake Katrine Ter, Gaithersburg, MD. 20879. My date of birth is 4/9/75 and I was born in Fairfax, VA, I am a Pro Sales Specialist and have worked for Lowe's for 3 years.

Based on our conversation today, I understand I caused a loss of $2,053.14 and am willing to pay it back.

On 3/08/21 and 3/19/21, I rang cash return transactions under Jeffrey Bowden's sales ID. He is my supervisor. He gave me his log in information so that the returns wouldn't hit my dept. sales. He has given me his log in twice with two different passwords. I gave the cash to someone I knew, Those three transactions totaled $601.30.

On 3/19/21, I rang two transactions for Pedro Andrade that I didn't validate, He claimed to have purchased the items online, He is

Christine DeLeva

CHRIS DANG

Jasmine Summers

DEF000466

Case 8:21-cv-01820-DKC   Document 41-5   Filed 04/29/22   Page 20 of 20

a contractor that works with me at the pro desk. I take accountability for not making sure those transactions were valid. Those two transactions totaled, $1,486.94.

I recently received a pay raise that was less than my co-workers. My supervisor showed me what everyone received and mine was significantly less than everyone else's. I spoke with my store manager, Scott Willis, about a pay increase as I feel that I deserve it with how much I do at the desk. He has yet to get back to me with an answer. I apologize for any loss I've caused Lowe's and would like to make things right and remain employed with the company.

Everything I've written is a true statement.

10:15am
Christine De Leva          _Christine De Leva_

CHRIS DANG   _Chris_          3/29/2021

Jasmine Summers   _Jasmine_

DEF000467