# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTINE DE LEVA,<br><br>             Plaintiff,<br><br>      v.<br><br>LOWE'S COMPANIES, INC. and LOWE'S HOME CENTERS, LLC,<br><br>             Defendants. | Case No. 8:21-cv-01820-DKC |

## DECLARATION OF JASMINE SUMMERS

I, Jasmine Summers, state as follows:

1.     I make this Declaration of my own free will, based upon my personal knowledge of the facts set forth below. I am over 18 years of age, and I am competent to make this Declaration.

2.     I have been employed by Lowe's Home Centers, LLC ("Lowe's) since January 2015 at the Frederick, Maryland store. My current position is Specialty Assistant Store Manager, and I also held this position in March 2021.

3.     On March 29, 2021, Senior Asset Protection Manager Chris Dang asked me to sit in on his interview of Plaintiff Christine De Leva as a witness and take notes on a witness log document. I sat in on the interview and took notes; a true and accurate copy of my Witness Interview Log is attached hereto as Exhibit 1.

4.     Mr. Dang conducted the interview of Ms. De Leva in the Staffing and Scheduling Administrator's office in the back of the Frederick store. Ms. De Leva entered the room voluntarily. During the interview, Mr. Dang reviewed the information and evidence that Ms. De

Leva completed fraudulent cash returns (taking the cash herself) and also engaged in merchandise "pass-off" transactions with a Lowe's customer named Pedro Andrade in which Ms. De Leva did not scan or charge Mr. Andrade for the merchandise. Ms. De Leva verbally admitted to taking the cash for herself in the fraudulent return transactions, and she also verbally admitted that she was giving merchandise to the customer (Mr. Andrade). She admitted that she knew Mr. Andrade and had his contact information. My contemporaneous notes for these admissions are captured in my Witness Interview Log. *See* Exhibit 1. Specifically, Ms. De Leva admitted to taking cash from the register to give to a friend. She stated that the "friend" needed money, that she took the cash home to the friend, and that she "doesn't know where it [the cash] went" after giving it to the friend. Ms. De Leva admitted to using her supervisor's login to complete the return transactions. She admitted to the three specific incidents of fraudulent cash returns at issue. She also admitted that she allowed Mr. Andrade to walk out of the store with unpaid Lowe's merchandise.

5. After Ms. De Leva made these admissions, Mr. Dang then asked her to write a statement of what happened. He did not suggest that she admit to anything; rather, Ms. De Leva freely admitted to stealing money from Lowe's and to the theft involving merchandise. She did not hesitate at all in her admissions. I do not recall Mr. Dang mentioning anything about whether Ms. De Leva would lose her job. I did not say anything to Ms. De Leva about her job. Ms. De Leva voluntarily wrote a statement and then signed it. I also signed the statement as a witness, as did Mr. Dang. A true and accurate copy of Ms. De Leva's written statement is attached hereto as Exhibit 2. In the statement, Ms. De Leva admitted her understanding that she caused Lowe's a loss of $2,053.14; that she rang cash returns on March 8 and March 19, 2021

and took the cash; and that she rang 2 transactions for Andrade that she "didn't validate." *See* Exhibit 2.  Ms. De Leva never mentioned discrimination, pay discrimination, or that she was being retaliated against for allegedly complaining about her pay.

6. Ms. De Leva did not ask me any questions prior to admitting to the theft at issue. After she had admitted to the theft activities and had written her statement, and after Mr. Dang had left the room, I recall her asking something about whether she might be arrested.  I do not recall answering her question; if I did, then I said that I did not know (as I had no idea what might happen next).

7. As noted above, Mr. Dang conducted the interview in the Staffing and Scheduling Administrator's office at the Frederick store.  The door was closed during the interview for privacy purposes.  I was sitting on the far side of room, Ms. De Leva was sitting closest to the door, and Mr. Dang was sitting in the middle.  Ms. De Leva was sitting so close to the door that she could have reached out her fingertips and touched it.  She could have left at any time. Neither of us were blocking her path to the door at any point during the interview.  Ms. De Leva did not ask if she could leave, and I did not tell her at any point that she could not leave.  Mr. Dang also did not tell Ms. De Leva at any point that she could not leave the interview.  Mr. Dang and I did not restrain or threaten Ms. De Leva in any way during the interview, including no threat of force or other conduct to remain in the room.

8. After Mr. Dang completed his interview of Ms. De Leva, two law enforcement professionals arrived to meet with Ms. De Leva.  I stepped out of the room to allow the officers to go in.  Mr. Dang left the door open while the officers met with Ms. De Leva.  This meeting

3

lasted only about 5 minutes, and I could hear the officers explain to Ms. De Leva that she was not being arrested as I was standing outside the room within hearing distance.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on April 26, 2022.

_____
JASMINE SUMMERS

# EXHIBIT 1

Lowe's Internal Report # C-4628947

# WITNESS INTERVIEW LOG

5

Witness' name & position: Jasmine Summers   ASM
Interviewer's name: Chris Dang
Subject's name & position: Christine
Location of interview: SSA office
Time interview began: 8 : 46  (AM)/ PM
*(Time subject entered room)*

Did the subject admit to any theft, fraud or intentionally causing a loss to Lowe's?   X Y   __ N

If so, **What** was the admission?
Admission was "yes" to taking cash from register to give to friend. Friend needed money. Allowed "Pedro" to walk out with merchandise.

Did the subject say **How** they did this?   X Y   __ N
Subject used department supervisors Genesis log in ID. Supervisor has given subject login information twice.

**How many** different occasions did the subject admit to theft, fraud or intentionally causing a loss to Lowe's?
3 occasions, the subject has admitted to fraud.

Did the subject say **Why** they committed the theft, fraud or intentional loss to Lowe's   X Y   __ N
Friend needed money. Subject took cash home to friend. Subject stated she doesn't get paid enough.

Did the subject say **When** this occurred?   X Y   __ N
March 8, 2021 and March 19, 2021 (2 transactions) Return invoices.

Did the subject say **Where** any money or merchandise is located?   __ Y  X N
Subject stated friend took money and "doesn't know where it went."

Did the subject agree to write a statement?   X Y   __ N
What time did the written statement begin?  9 : 44  (AM)/ PM
What time did the written statement end?  10 : 15  (AM)/ PM
What time did the subject leave the interview room?  11 : 35  (AM)/ PM
Did the subject have any questions or concerns about the investigation?   __ Y   __ N   If so, what were they?

Did the subject make any requests?   __ Y   __ N   If so, what were they?

WITNESS SIGNATURE: *Jasmine Summers*   DATE: 3/29/21

06/10/2020

DEF000468

# EXHIBIT 2

3/29/2021
9:44 am

I, Christine DeLeva, am giving a statement to Chris Dang. I live at 7417 Lake Katrine ter, Gaithersburg, MD. 20879. My date of birth is 4/9/75 and I was born in Fairfax, VA. I am a Pro Sales Specialist and have worked for Lowe's for 3 years.

Based on our conversation today, I understand I caused a loss of $2,053.14 and am willing to pay it back.

On 3/08/21 and 3/19/21, I rang cash return transactions under Jeffrey Bowden's sales ID. He is my supervisor. He gave me his log in information so that the returns wouldn't hit my dept. sales. He has given me his log in twice with two different passwords. I gave the cash to someone I knew. Those three transactions totaled $601.30.

On 3/19/21, I rang two transactions for Pedro Andrade that I didn't validate. He claimed to have purchased the items online. He is

Christine DeLeva                [signature]
CHRIS DANG  [signature]         Jasmine Summers  [signature]

DEF000466

Page 2

a contractor that works with me at the pro desk. I take accountability for not making sure those transactions were valid. Those two transactions totaled, $1,486.94.

I recently received a pay raise that was less than my co-workers. My supervisor showed me what everyone received and mine was significantly less than everyone else's. I spoke with my store manager, Scott Willis, about a pay increase as I feel that I deserve it with how much I do at the desk. He has yet to get back to me with an answer. I apologize for any loss I've caused Lowe's and would like to make things right and remain employed with the company.

Everything I've written is a true statement.

10:15am
Christine De Leva         [signature]
CHRIS DANG    [signature]    3/29/2021
Jasmine Summers  [signature]